IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| BARBARA JONES | § | |
| | § | |
| V. | § | CIVIL ACTION NO. G-09-001 |
| | § | |
| UNIVERSITY OF TEXAS MEDICAL | § | |
| BRANCH AT GALVESTON, ET AL. | § | |

### REPORT AND RECOMMENDATION

Before the Court, by referral from the Honorable Kenneth M. Hoyt, United States District Judge, is the "Motion for Summary Judgment" of Defendants, Tina Strawn and Sheila Lynch; the Motion seeks the dismissal of all of the remaining claims asserted against them in the complaint of Plaintiff, Barbara Jones. The Court, having now considered the Motion, the Plaintiff's response, the Defendants' reply and the summary judgment exhibits submits this Report and Recommendation to the District Court.

This is a race or color discrimination case that was brought by Plaintiff, Barbara Jones, pursuant to 42 U.S.C. §§ 1981 and 1983 against the University of Texas Medical Branch at Galveston (hereinafter "UTMB"), Tina Strawn and Sheila Lynch following Jones' termination of employment from the Patient Finance Department. UTMB was previously dismissed on March 25, 2009, by Order of the District Court.

Jones began working at UTMB in 1994. For approximately eight years prior to her termination in May 2005, Jones worked in the Finance Department processing Medicaid claims. Jones' job was to "follow up" on claims for services rendered to Medicaid-covered patients at UTMB that Medicaid initially denied, determine the cause for rejection, correct the problem and resubmit the claim for payment. Apparently, the major reason claims were rejected was that the

employee who prepared the initial claim failed to use the proper Medicaid "code" applicable to the service rendered to the patient. Consequently, much of the work performed by Jones was simply changing the codes on the claims and resubmitting them to Medicaid. For years Jones was permitted, by policy or practice, to make the code changes without approval of any supervisor.

In mid-2003 Strawn was made the supervisor/manager of the Medicaid area in the Patient Finance Department where Jones worked. After some time on the job Strawn decided that UTMB was losing money because of repeated improper coding on initial and follow up submissions to Medicaid which, she feared, could also present the appearance of fraudulent conduct in billing Medicaid. As a result, in March of 2004, Strawn held a staff meeting, attended by Jones, at which she imposed a new follow up procedure which required any initial code changes to be personally approved by her before resubmission of the billing to Medicaid. Despite the change in procedure, Jones continued to unilaterally, without Strawn's approval, change codes and resubmit bills.

On October 18, 2004, Strawn again called a staff meeting, attended by Jones, and reminded her employees to get her prior approval of any code changes. After the meeting Strawn sent each staff member an e-mail reiterating the requirement of her personal approval of initial code changes.

Once again, on April 5, 2005, Strawn convened a staff meeting, attended by Jones, and reemphasized the follow up code change policy.[1]  Following the meeting, Jones indicated to Lynch that she was not going to follow Strawn's directive. When Lynch protested, Jones accused

---

[1] According to Jones, the only reason for the meeting on April 5, 2005, was "for Ms. Strawn's education on what follow up does and what billing does."

2

Lynch of not supporting the Medicaid team's dissatisfaction with Strawn's policy: "You ain't for us," she told Lynch.  In the next few days, from April 6 and April 12, Jones made 8 additional unilateral code changes which were retrieved from the outgoing mail before they were sent to Medicaid for reconsideration.  Strawn then requested a meeting with Jones to discuss her conduct, but Jones refused until after she could speak with the Human Resources Department.  According to Jones, she went to HR to explain that Strawn and Lynch, as new comers to Medicaid billing, did not know anything about how it worked and that Strawn's policy of personal approval of code changes would slow the follow up process, create a backlog of claims and jeopardize UTMB collection efforts due to Medicaid deadline violations, for all of which Jones feared she would be blamed.  Thereafter, on May 3, 2005, Jones expressly refused to process a number of claims that she felt had been delayed by Strawn and returned them to Lynch.

On May 4, 2005, Strawn issued a "Notice of Intent to Terminate" letter to Jones which chronicled, *inter alia*, her continued code change violations; Jones refused to sign the letter.  On May 5, 2005, Jones attended a pre-termination meeting with Strawn and a Human Resources Representative; at the meeting Jones did not contest Strawn's accusations or offer any explanation for her conduct.  Following the meeting, Jones was terminated.

Jones appealed through the 4-step process available at UTMB.  At step 3, a full blown evidentiary hearing was held on October 13, 2005, at which Jones was represented by counsel.  On November 18, 2005, the President of UTMB affirmed Jones' termination for intentional insubordination due to her persistent unauthorized code changing.

On January 5, 2009, Jones filed this action complaining of race discrimination in violation of 42 U.S.C. §§ 1981 and 1983. Following the completion of discovery, the Defendants filed the instant Motion for Summary Judgment.

The Court sees no need to recite the law of summary judgment analysis in detail. It will simply note that a complete failure of proof of an essential element of the nonmovant's case renders all other facts immaterial and there can be no genuine of issue of material fact to justify a trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)  Therefore, after all is said and done, to avoid summary judgment, Jones' evidence must establish a submissible case on the necessary element that her race was a substantial or motivating factor in Strawn's decision to terminate her. See Crawford v. Western Electric Co., Inc., 614 F.2d 1300, 1315 (5th Cir. 1980) ("We require a showing of purposeful discrimination in cases brought under § 1981.") see also, Whiting v. Jackson State University, 616 F.2d 116, 121 (5th Cir. 1980) (When § 1983 is used as a parallel remedy for transgressions of § 1981 and Title VII rights, the elements of the causes of action are the same.) In the opinion of this Court, Jones' evidence is insufficient to do so.

When asked at her deposition to identify the bases for her opinion that race was a factor in Strawn's decision to terminate her, Jones cited two things: Strawn's belief that Jones had made an intra-racial comment to Lynch and Strawn's impermissible reliance on stale information from some of Jones' old and out-dated evaluations. The Court will address each reason in turn.

Lynch, who was the team leader in the Patient Finance Department, is a light-skinned African American; Jones is a dark-skinned African American. Shortly after Lynch arrived at the department as team leader, Jones realized that Lynch was siding with Strawn on the new follow-up

4

procedures despite the other employees concerns that the policy changes were counterproductive. During the conversation at Lynch's cubicle following the meeting on April 5, 2005, Jones told Lynch "You ain't for us" as an expression of her dissatisfaction. According to Jones, as understood by this Court, Lynch intentionally and falsely represented to Strawn, in an e-mail, that Jones had accused her of intra-racial discrimination, that is, that Lynch had chosen to perceive herself as more white than black and, therefore, harbored a racial animus toward darker colored African Americans like Jones. Jones admits that Lynch lacked any authority to take any adverse employment action against her and she concedes that neither Lynch nor Strawn ever made any other statements Jones considered racially offensive. Nevertheless, Jones claims that Strawn based her decision to terminate her, in part, on Lynch's accusation. Therefore, to avoid summary judgment, Jones needs the Court to leap to the "reasonable" inference that Lynch's racial animus can be attributed to Strawn. To do so, Jones suggests that the e-mail must have caused Strawn to believe that Jones' comment was, indeed, race-based and that since, in Jones' subjective opinion, Strawn based her decision on the misrepresented comment, Strawn must also harbor racial animus toward dark colored African Americans, like Jones, but not light colored African Americans, like Lynch.

      While the Court will accept the proposition that a well-founded claim of intra-racial "color" discrimination is cognizable, see e.g. Walker v. Secretary of Treasury, I.R.S., 713 F.Supp. 403 (N.D. Ga., 1989) (citing Saint Francis College v. Al-Kahzraji, 481 U.S. 604 (1987)), it is well-established law that an employee's subjective belief that she suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment

5

motion in the face of proof showing an adequate non-discriminatory reason. <u>Douglass v. United Services Auto Ass'n.</u>, 79 F.3d 1415, 1430 (5th Cir. 1996)   Jones' speculative accusation against Strawn will not support the inference she wants the Court to draw.

Jones' second reason, the use of historical, but stale, information from past evaluations in the Notice of Intent to Terminate letter cannot be reasonably inferred to be a manifestation of Strawn's racial animus.  Strawn may have been wrong to include the information, but Jones even admits that when she talked with the Affirmative Action Representative, Tino Gonzales, on the day she was given the letter and was told by him that it was improper to use such old information, she did not feel Strawn had discriminated against her because of her race.  Jones' attempt to now draw that inference is not reasonable; it is simply another proposed subjective conclusion made in an attempt to avoid summary judgment.

Since her termination, Jones has pointed to other facts as being evidence of Strawn's racial animus, but none save her complaint from summary judgment.  Jones points out that two other African American employees were targeted for termination by Strawn at the same time she was terminated, but she offers no evidence that the two employees were similarly situated.  Moreover, following Jones' termination Strawn hired, *inter alios*, two additional African American employees.  Finally, Jones argues that following her termination a white employee, Judy Roberts, took over her job and was allowed to make unilateral code changes without being disciplined, but Jones' argument is contrary to the evidence.  For the short period of time Roberts did perform the follow-up of the rejected claims, she testified that she only made changes to those codes which had

previously been approved by Strawn under identical circumstances, which was in compliance with Strawn's procedures.

In the last analysis, Jones' evidence is insufficient to support a reasonable conclusion that race was either a substantial or motivating factor in Strawn's decision to terminate her.

For the foregoing reasons, it is the **RECOMMENDATION** of this Court that the "Motion for Summary Judgment" (Instrument no. 27) of Defendants Tina Strawn and Sheila Lynch be **GRANTED** and that the Complaint of Plaintiff, Barbara Jones, be **DISMISSED in its entirety**.

The Clerk **SHALL** send a copy of this Report and Recommendation to the Parties who **SHALL** have until **November 15, 2010**, to have written objections, filed pursuant to 28 U.S.C. §636(b)(1)(C), **physically on file** in the Office of the Clerk.  The Objections SHALL be electronically filed and/or mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553.  Failure to file written objections within the prescribed time **SHALL** bar any Party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this ___29th___ day of October, 2010.

_____
John R. Froeschner
United States Magistrate Judge